### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF KENTUCKY
### OWENSBORO DIVISION

**CIVIL ACTION NO.: 4:07CV-P144-M**

**MARK C. ARFLACK**                                                    **PLAINTIFF**

**v.**

**COUNTY OF HENDERSON, KENTUCKY** *et al.*                    **DEFENDANTS**

### <u>MEMORANDUM OPINION</u>

Seeking both monetary and punitive damages, Plaintiff Mark C. Arflack, a former inmate at the Henderson County Detention Center (HCDC), filed this suit against the following individuals in both their official and individual capacities:  County Sheriff Ed Brady,[1] Jailer Ron Herrington, Chief Deputy Freddie Rowland, Major Overfield, Deputy Jailer McDaniel, Deputy Jailer Vaught, Deputy Jailer Baker, Officer Greenwell, Medical Director Krystal Souders, Head Nurse Theda Owens,[2] and Southern Health Partners President Jeffery Reasons.  Arflack also named Henderson County as a defendant.  Arflack alleges that Defendants failed to protect him from an assault by another inmate, failed to provide him proper medical care after the assault, and denied him use of the law library resulting in him missing an appeal deadline.  On initial review of the complaint pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth,* 114 F.3d 601 (6th Cir. 1997), the Court allowed Arflack's claims to proceed for further development.

This matter is currently before the Court on Defendants Reasons and Souders's motion for summary judgment (DN 45); Defendants Baker, Greenwell, Herrington, McDaniel, Overfield,

---

[1]      By Order entered April 7, 2009 (DN 79), the Court dismissed Arflack's claims against Defendant Brady for failure to state a claim.

[2]      Head Nurse Theda Owens has yet to be properly served.

Rowland, Vaught, and Henderson County's motion for summary judgment (DN 67); and Arflack's motions for summary judgment (DNs 69 & 70). The motions for summary judgment have been fully briefed and are ripe for decision. For the reasons set forth below, the Court will grant the defendants' motions for summary judgment and will deny Arflack's motions for summary judgment.

## I. FACTS

In September 2006, Arflack, a convicted federal inmate, was removed from a federal detention facility in Coleman, Florida, and transported to the HCDC in connection with state charges that were pending against him in Kentucky. Upon arrival at the HCDC, Arflack was placed in a general-population cell. In October 2006, the HCDC removed Arflack from the general population and placed him in maximum security. He was initially put in cell number 120. In November 2006, however, Arflack was moved out of cell number 120 and put in maximum-security cell number 113.

Arflack alleges that after the move to cell number 113, he received multiple threats of physical violence from state-inmate Kenny Holland, a resident of cell number 113. Arflack alleges that on several different occasions he verbally reported Holland's threats to various HCDC employees and requested to be moved to a different cell to no avail. It is undisputed that in December 2006 Arflack made a written report of inmate Holland's threats and a request to be moved to a different cell by filling out a requisition form. Arflack stated on the requisition form:

> Mr. Rowland I am asking to be moved to another cell. Kenny Holland has already been sentenced to 12 years in another county for assault charges and he has made physical threats on me. I would like to be moved out of maximum security and put in a population cell with a safer environment. I would like being put with other federal inmates.

(DN 1, App. at Ex. 4). Defendant Vaught denied Arflack's requisition stating "may not request cell placement." *Id.* Arflack alleges that in January 2007, he filled out another, similar requisition form

2

requesting a change in cell placement and citing continued threats by inmate Holland. Arflack alleges that this request was also denied. Defendants assert that there is no record of a cell-change request by Arflack in January 2007.

On January 18, 2007, inmate Holland severely beat Arflack. Then Holland and another inmate, McElveen, placed an unconscious Arflack in his bunk for approximately five-and-one-half hours. By the time that prison officials discovered Arflack, his condition had deteriorated to the point that he had to be airlifted to the University of Louisville Hospital for emergency surgery for serious head and face injuries.

Arflack was released from the hospital and returned to the HCDC on January 25, 2007, where he was initially placed in isolation. On February 19, 2007, Arflack filled out a grievance related to the denial/loss of his January requisition form about Holland's threats and his need to be moved to a different cell. In his grievance Arflack complained:

> Addressed a request form to Mr. Rowland dated around 1-8-07 requesting to be moved from cell 113 back to cell 120. Forms supposed to be answered within 72 hours. I still have not got that request form back with Mr. Rowland's response. Please forward my copy of the 1-08-07 request form back to me. Thanks!

(DN 1, App. at Ex. 5). Defendant Vaught answered the grievance on March 1, 2007, stating "no record of you turning in any forms in January." *Id.*

Arflack alleges that after being released back to the HCDC, he continued to suffer medical problems as a result of the assault. He states that when he requested follow-up medical care, he was told that "you are an inmate. The HCDC will not spend the money needed to get you back in the shape you was in upon arriving at the detention center." Arflack states that the injuries he sustained from Holland's assault on him are permanent and debilitating, including eventual blindness in his right eye.

Separate from his assault-related claims, Arflack also alleges that he was denied access to the courts while incarcerated at the HCDC.  According to Arflack, when he arrived at the HCDC he was working on an "appeals motion for Constitutional Issues of the Speedy Trial Act, involving his case numbers 01-CR-00122 and 02-CR-00053, which was to be filed with the Kentucky Court of Appeals and was eventually also filed in the Kentucky Supreme Court."  Arflack states that he "had a deadline date of (09-29-06) to get this Appeal Motion filed with Appeal's Court."  According to Arflack, he submitted a request to prison officials on September 25, 2006, asking to use the prison library to make copies of his appeals motion and informing officials of his September 29, 2006, deadline.  Arflack states that he did not receive the request form back until October 4, 2006, several days after the deadline had passed.  Arflack claims that because Defendants denied him use of the law library and delayed allowing him to make copies he "was unable to file the entire appeal, his chances was forever lost."

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact which requires the denial of a summary judgment motion."  *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989).  "The pivotal question is whether the party bearing the burden of proof has presented a jury question as to each element of its case."  *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir.

4

1996).

"'[W]here the moving party has the burden -- the plaintiff on a claim for relief or defendant on an affirmative defense -- *his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party*.'" *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. Schwarzer, Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact, 99 F.R.D. 465, 487-88 (1984) (emphasis in original)). "[I]f the moving party also bears the burden of persuasion at trial, the moving party's initial summary judgment burden is 'higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002) (quoting 11 James Wm. Moore, et al., Moore's Federal Practice § 56.13[1], at 56-138 (3d ed. 2000)). Thus, "[s]ummary judgment in favor of the party with the burden of persuasion . . . is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Where the nonmoving party bears the burden of proof at trial, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Id.* The moving party, therefore, is "entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." *Id.* (internal quotation marks omitted).

### III. DEFENDANTS REASONS AND SOUDERS'S MOTION FOR SUMMARY JUDGMENT

Arflack's complaint sets forth one averment regarding jail medical staff. Numerical paragraph 11 states, "Further the jail staff and medical staff demonstrated deliberate indifference to his medical needs by not making certain the bones in his face and around the eyes were repaired after the attack. They neglected such! This denial of medical care produced permanent damages." (DN 1).

Medical services at the HCDC are provided pursuant to contract by employees of Southern Health Partners, Inc. (SHP). Defendant Reasons is the president of SHP, and Defendant Souders is a Regional Manager. As president of SHP, Defendant Reasons never worked directly at the detention center. As Regional Manager, Ms. Souders was not working directly at the facility at the time of the assault or afterwards. (DN 74, Ex. 1 at p. 6). Arflack sued Defendants Reasons and Souders in both their individual and official capacities.

### A.      Individual-Capacity Claims

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "Respondeat superior[3] is not a proper basis for liability under § 1983." *McQueen v. Beecher Cmty. Schs.*, 433 F.3d 460, 470 (6th Cir. 2006). "Nor can the liability of supervisors be based solely on the right to control employees, or simple awareness of employees' misconduct." *Id.* (internal

---

[3]      Respondeat superior is "the doctrine under which liability is imposed upon an employer for the acts of his employees committed in the course and scope of their employment." BALLENTINE'S LAW DICTIONARY (3d ed. 1969).

quotations omitted).  "In order for supervisory liability to attach, a plaintiff must prove that the official 'did more than play a passive role in the alleged violation or showed mere tacit approval of the goings on.'"  *Loy v. Sexton*, 132 F. App'x 624, 626 (6th Cir. 2005) (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)).  In other words, "liability under § 1983 must be based on active unconstitutional behavior."  *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).  "A supervisor's awareness of allegations of unconstitutional conduct and failure to act are not a basis for liability."  *McCurtis v. Wood*, 76 F. App'x 632, 634 (6th Cir. 2003).

Based on its review of the record, the Court finds that neither Defendant Reasons nor Defendant Souders was involved in Arflack's direct medical care.  Because their supervisory positions do not automatically make them liable for the actions/inactions of their subordinates, they are entitled to summary judgment on Arflack's individual-capacity claims against them.  *See, e.g.*, *Brown v. Green*, No. 97-1117, 1997 U.S. App. LEXIS 35331 (6th Cir. Dec. 12, 1997) ("Defendant Green, being sued in her official capacity as the Medical Director of the Michigan Department of Corrections, cannot be held liable for an alleged constitutional violation, because the doctrine of respondeat superior does not apply in  § 1983 lawsuits to impute liability onto supervisory personnel."); *Farrow v. West*, 320 F.3d 1235, 1238 n.1 (11th Cir. 2003) (holding that the regional director of prison medical services was not liable for actions of subordinate medical staff); *Foxworth v. Major*, No. 8:08-2795-CMC-BH, 2009 U.S. Dist. LEXIS 66751 (D.S.C. July 30, 2009) (granting defendant Reasons's motion to dismiss because Reasons, the president of SHP, was not personally involved in the plaintiff's medical care).

**B.    Official-Capacity Claims**

Arflack's official-capacity claims against Reasons and Souders are construed as brought

against their employer, SHP.  *See George v. Corr. Corp. of Am.*, No. 3:05-CV-268-S, 2006 U.S. Dist. LEXIS 1575 (W.D. Ky. Jan. 13, 2006).  A private corporation is liable under § 1983 only when an official policy or custom of the corporation causes the alleged deprivation of federal rights.  *See Street v. Corr. Corp. of Am.*, 102 F.3d 810, 817 (6th Cir. 1996).  Arflack alleges that he was told by medical staff that, because he was a federal prisoner, the HCDC would not spend money for his follow-up medical care.  Construed liberally, the Court finds that Arflack alleged that SHP and the HCDC had a policy of not providing medical care to federal prisoners in their custody in violation of the Eighth Amendment.

Despite time for discovery, however, Arflack has not put forth evidence that tends to show the existence of such a policy.  Additionally, the record belies Arflack's claim that his medical care after his return to the HCDC violated constitutional standards.  The Eighth Amendment, which applies to the States through the Due Process Clause of the Fourteenth Amendment, *Robinson v. California*, 370 U.S. 660, 666, (1962), prohibits the infliction of "cruel and unusual punishments" on those convicted of crimes.  *See Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991).  "Deliberate indifference to serious medical needs of prisoners" violates the Eighth Amendment.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  "This conclusion does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment."  *Id.* at 105.  "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.  In order to state a cognizable [Eighth Amendment] claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."  *Id.* at 106.

The Supreme Court has established a two-part test, with both a subjective and objective

prong, to determine whether a prisoner's Eighth Amendment right to adequate medical care has been violated. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001). First, the deprivation alleged must be "'sufficiently serious' [in that] a[n] . . . official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'" *Farmer*, 511 U.S. at 834 (quoting *Wilson*, 501 U.S. at 298). The second subjective prong requires plaintiff to show that the defendant had a "sufficiently culpable state of mind." *Wilson*, 501 U.S. at 297; *Napier*, 238 F.3d at 742. "To sustain such a claim, it is not necessary that the . . . officials consciously sought to inflict pain by withholding treatment; it is sufficient to show deliberate indifference to [a prisoner's] serious medical needs." *Molton v. City of Cleveland*, 839 F.2d 240, 243 (6th Cir. 1988). Specifically, to satisfy the subjective prong, "the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001) (citing *Farmer*, 511 U.S. at 837).

When prison officials provide medical care in good faith but they nonetheless fail to promptly or completely restore the prisoner to good health, those officials are not "deliberately indifferent" to the prisoner's health. *Holmes v. Sheahan*, 930 F.2d 1196, 1199 (7th Cir. 1991). If the prisoner, or even another doctor, disagrees with the treatment provided, so long as it meets minimal standards of adequacy, a mere disagreement over medical judgment states no constitutional claim. *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989) ("[W]e disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment. Along with all other aspects of health care, this remains a question of sound professional judgment."). A claim that

9

medical treatment was inadequate may present a viable medical malpractice claim under state tort law, but it does not state a constitutional claim. *Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004); *Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.")

The Court has reviewed portions of Arflack's medical records regarding his care after he was released from the hospital and returned to the HCDC. Based on those records, the Court finds that no reasonable jury could conclude that Defendants violated Arflack's Eighth Amendment rights by denying him medical care based on his status as a federal inmate. Arflack was provided with follow-up medical attention from SHP and detention center staff as well taken to see outside doctors. While Arflack might not have received all the care he desired, there has been no showing by him that his care was neglected to a level that would violate the Constitution. Accordingly, Defendants Reasons and Souders are entitled to summary judgment on Arflack's official-capacity claims against them.

As the Court has determined that Defendant Souders and Reasons are entitled to summary judgment on Arflack's claims against them, the Court will deny Arflack's cross-motion for summary judgment on these claims.

## IV. DEFENDANTS BAKER, GREENWELL, HERRINGTON, MCDANIEL, OVERFIELD, ROWLAND, VAUGHT, AND HENDERSON COUNTY'S MOTION FOR SUMMARY JUDGMENT

### A.    Failure-To-Protect

Defendants' sole argument in favor of summary judgment on Arflack's failure to protect claim is that Arflack did not exhaust his administrative remedies prior to filing suit. With respect to exhaustion, the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a) provides that:

> No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. § 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such

administrative remedies as are available are exhausted.

Prisoners are no longer required to demonstrate exhaustion in their complaints. *See Jones v. Bock*, 549 U.S. 199 (2007). Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA" which the defendant bears the burden of establishing. *Id.*

"Because the prison employees bear the burden on exhaustion, ***they must do more than point to a lack of evidence in the record***; rather they must 'establish affirmatively' that the evidence is so one-sided that no reasonable fact finder could find" in favor of the plaintiff on the exhaustion issue. *Schaefer v. Bezy*, No. 08-3349, 2009 U.S. App. LEXIS 15363 (7th Cir. July 7, 2009) (emphasis added); *Fonseca v. Conrail*, 246 F.3d 585, 590 (6th Cir. 2001) (holding that the party moving for summary judgment on an affirmative defense bears the burden of proof). If the defendant fails to meet its burden of proof, the plaintiff has no obligation to proffer any additional evidence in order to rebut the exhaustion defense. *Fonseca*, 246 F.3d at 590.

The PLRA requires "proper exhaustion," which means that the inmate must comply with all of the prison's "deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). When assessing whether a prisoner has properly exhausted his claims as required by the PLRA, the court looks to the prison's procedural rules. *See Jones*, 549 U.S. at 218. Thus, this Court begins its analysis of the exhaustion issue with the HCDC's administrative procedures. The procedures provide:

**Grievance Procedure**

**POLICY:**

Any inmate shall be allowed to file a grievance at such time as the inmate believes he or she has been subject to abuse, harassment, abridgement of civil rights, or denied privileges specified in the posted rules. (Grievances must be restricted to incidents which occur when the prisoner is in custody of the facility.) No prisoner

11

shall fear against reprisal for initiating grievance procedure in an attempt to resolve legitimate complaints.

**PROCEDURE:**

1. Transmittal:  A grievance shall be made in the form of a written statement by the inmate promptly following the incident, on an official grievance form.  Such statement shall be transmitted promptly and without interference to the jailer by a detention officer or staff member to whom the grievance is given.

2.  Contents: The grievance shall state fully the time, date, and names of those detention officers and/or staff members involved, and the pertinent details of the incident including the names of any witnesses.

3.  Review.  Upon receipt of a grievance by the jailer, the jailer shall review the grievance and determine if it constitutes:

     a. a prohibited act by a detention officer or staff member
     b. a violation of the inmate's civil rights
     c. a criminal act, or
     d. an abridgment of inmate privilege as cited in the posted rules.

4.  Investigation:  If the grievance constitutes a prohibited act by a detention office or staff member, a criminal act, or a violation of the inmate's civil rights, the jail shall order a prompt investigation.  If the grievance constitutes an abridgment of the inmate's privileges, the jailer may appoint an impartial member of the staff to investigate the grievance and make a report of findings and recommendations.

NOTE: Any officer or staff member who subjects an inmate to harassment, curtailment of privileges or any type of punishment because of a grievance or attempts to prevent or interfere with the reporting of a grievance shall be subject to disciplinary action.

5. Response:  Any inmate who submits a grievance to the jailer [sic] igation of the grievance, to include findings and actions taken by the jailer.

6.  Appeal:  If not satisfied with the disposition of the grievance by the jailer, the inmate shall be furnished paper, pencil and an envelope in order to set forth his grievance in writing and his objection to the disposition of the grievance.  The inmate's appeal letter will then be forwarded to the County Judge/Executive.

(DN 67, Ex. E).

The defendants contend that Arflack did not exhaust his administrative remedies because he

12

did not comply with the grievance procedure listed above.  They contend that the facts of this case are similar to those of *Wyatt v. Leonard*, 193 F.3d 876 (6th Cir. 1999).  In *Wyatt*, a fellow inmate raped Wyatt while he was housed in a segregation cell.  *Wyatt*, 193 F.3d at 877.  The issue before the Court was whether Wyatt was required to exhaust his administrative remedies prior to filing a claim seeking money damages pursuant to § 1983.  *Id.*  Wyatt argued that he did not have to exhaust his administrative remedies because money damages were not an available remedy through the administrative process.  Disagreeing with Wyatt, the Sixth Circuit held that "prisoners must exhaust administrative remedies even in money damages cases . . . ."  *Id.* at 879; *see also Booth v. Churner*, 532 U.S. 731, 741 (2001) ("Congress has mandated exhaustion . . . regardless of the relief offered through administrative procedures").  In other words, Wyatt was required to grieve his attack in order to have exhausted his administrative remedies.

Although there is some disagreement by the parties as to whether Arflack filed a grievance form on January 8, 2007, this disagreement is immaterial.  Whatever information may have been in that grievance form was already made available to the jail in Arflack's December 17, 2006 requisition form.  What is material, however, is that Arflack does not contend that he ever grieved the attack after it occurred in accordance with *Wyatt*.[4]  He contends that he was not required to grieve the attack because he did not file his lawsuit until after he was transferred to another facility. The Court disagrees.  "The mere fact that [Arflack] has been transferred to another prison facility does not necessarily render the exhaustion requirement moot."  *Rodriguez v. Senkowski*, 103 F. Supp. 2d 131, 134 (N.D.N.Y. 2000).  Arflack does not contend that he was prohibited from filing

---

[4]      Arflack did file a grievance form after the attack occurred, but his chief complaint was that the jail failed to address his request form filed on or about January 8, 2007.  It mentioned nothing of the assault.

13

a grievance by use of the mail, nor does he suggest that jail officials refused to provide him grievance forms either prior to or after his transfer.  *See Young v. Karnes*, No. 2:07-cv-0870, 2008 WL 4186227, at *3 (S.D. Ohio Sept. 10, 2008) (citing *Medina-Claudio v. Rodriguez-Mateo*, 292 F.3d 31, 35 (1st Cir. 2002)).   Because the Court finds that Arflack failed to exhaust his administrative remedies by grieving his attack prior to initiating this litigation, his claim fails. Accordingly, summary judgment in favor of the defendants on Arflack's failure-to-protect claim is warranted.

## B.     Denial of Access to Courts

Prisoners have a First and Fourteenth Amendment right of access to the courts.  *See Lewis v. Casey*, 518 U.S. 343, 354 (1996).  In assessing whether a state has violated that right, we ask first whether the claimant has demonstrated an "actual injury."  *See Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005).  "The requirement that an inmate show 'actual injury' derives from the constitutional principle of standing."  *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). "'Meaningful access to the courts is the touchstone,' and the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim."  *Lewis*, 518 U.S. at 351 (1996) (internal citations omitted). "Examples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline."  *Harbin-Bey*, 420 F.3d at 578.

Second, a claim of denial of access to the courts must allege more than mere negligence by the state actor who caused the injury.  *Sims v. Landrum,* 170 F. App'x 954 (6th Cir. 2006). "Plaintiff's claim that a right of access to the courts has been impeded requires him to allege

14

intentional conduct . . ., [but] does not require an additional showing of malicious motive.  When access to courts is impeded by mere negligence, as when legal mail is inadvertently lost or misdirected, no constitutional violation occurs."  *Simkins v. Bruce*, 406 F.3d 1239, 1242 (10th Cir. 2005) (citations and footnote omitted).

Arflack alleges that the HCDC failed to timely act on his request to make copies for an appellate filing.  However, Arflack does not allege that his filing was rejected because he failed to file the correct number of copies.  Furthermore, Arflack does not explain what type of motion he was trying to file or how it related to the preservation of his appeal.  He states that his appeal concerned a "speedy trial" issue in his criminal action numbers 01-CR-00122 and 02-CR-00053.  The Court takes judicial notice that on September 12, 2006, the Kentucky Court of Appeals denied Arflack's petition for writ of mandamus on the speedy trial issue as moot due to the fact that the Henderson Circuit Court granted Arflack's motion for a speedy trial in actions 01-CR-00122 and 02-CR-00053 and ordered the real party in interest to bring Arflack to trial within 180 days from 7/18/2006.  *See Arflack v. Hayden*, No. 2006-CA-1437-OA, Sept. 12, 2006 Order.  Furthermore, the Court takes judicial notice that Arflack attempted to file a direct appeal to the Kentucky Court of Appeals on the speedy trial issue that was dismissed as premature on October 19, 2006.  *See Arflack v. State of Kentucky*, No. 2006-CA-001574, Oct. 10, 2006 Order.  Prior to dismissal Arflack filed a response to a show cause order on September 28, 2006.  *See id.*, Arflack's Aug. 28, 2006 Show Cause Response.

In conclusion, a review of Arflack's two appeals during the relevant time period demonstrates that he was neither prejudiced by the HCDC's delay in processing his copy requests nor prevented from accessing the appellate courts.  One of his appeals was dismissed as moot given

15

the relief he was afforded in state court, and the other was dismissed as premature after Arflack had an opportunity to show cause leaving open his ability to raise the speedy-trial issue on direct appeal at a later date.  Thus, on summary judgment, Arflack has failed to demonstrate prejudice.

Arflack has likewise failed to demonstrate that the delay in processing his request was an intentional act by the HCDC officials.  The delay, while improper, does not appear to have been motivated by a desire to impede Arflack's access to the courts.  The most Arflack has shown is that the HCDC officials acted negligently because they failed to timely process his request.  The Sixth Circuit has held that a mere delay by prison officials in processing a plaintiff's request generally does not state a denial-of-access-to-courts claim.  *See Garrison v. Corr,* 26 F. App'x 410 (6th Cir. 2001) (holding that prison officials' delay in releasing funds from the plaintiff's prison trust account to pay filing fee was mere negligence and failed to state a constitutional claim).

After an opportunity for discovery, Arflack has shown neither true prejudice to his legal rights nor intentionally reckless conduct by the HCDC Defendants.  As such, the Court concludes that summary judgment in favor of these Defendants is appropriate on Arflack's denial-of-access-to-the-courts claim.  For the same reasons, Arflack's motion for summary judgment on this claim will be denied.

## V. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** as follows:

1.      The motion by the defendants, Reasons and Souders, for summary judgment (DN 45) is **GRANTED**;

2.      The motion by the defendants, Baker, Greenwell, Herrington, McDaniel, Overfield, Rowland, Vaught, and Henderson County, for summary judgment (DN 67) is **GRANTED**; and

3.       The motions by the plaintiff, Arflack, for summary judgment (DNs 69 & 70) are

**DENIED**.

4.       A Judgment will be entered consistent with this Opinion.

cc:    Counsel of Record
       Mark C. Arflack, pro se

17